967 F.2d 593
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Randolph DICKEY, Defendant-Appellant.
 No. 91-10099.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 10, 1992.
Decided June 15, 1992.
 
 1
 Before CYNTHIA HOLCOMB HALL and WIGGINS, Circuit Judges, and BURNS,* District Judge.
 
 
 2
 MEMORANDUM**
 
 OVERVIEW
 
 3
 Appellant appeals his conviction for violating 18 U.S.C. section 876 by mailing threatening communications and 18 U.S.C. section 1951 by interfering with commerce by threats of violence. Appellant claims that the court improperly admitted hand writing samples seized from his home. He also claims that the district court improperly instructed the jury on the elements of the charged crimes. This court has jurisdiction over this timely appeal pursuant to 28 U.S.C. section 1291, and we affirm.
 
 STATEMENT OF FACTS
 
 4
 On September 21, 1989, the Circus Circus Hotel in Las Vegas, Nevada, received a letter addressed to "Owner." The letter demanded $800,000 or the writer would attempt to blow up the hotel and casino. The money was to be placed in four heavy duty garbage bags and left in a gray 1989 Toyota Tercel coupe in the Von's grocery store parking lot on October 5, 1989. The keys to the car were to be left inside the car. If the demands were not met, the writer said he would have "three unknowing teens bring three time bombs into Circus Circus on a very busy night."
 
 
 5
 The administrative assistant, Nancy Gambardella, who had received the letter, gave it to Emmett Michaels, chief of security. Michaels notified the FBI and the letter was sent to Washington, D.C., for analysis.
 
 
 6
 On September 28, 1989, Circus Circus received a second letter, similar to the first. The second, however, changed the color of the car and the parking lot where it should be left. Additionally, the second letter included a newspaper clipping about an IRA bombing in England. Gambardella again sent the letter on to Michaels, who sent it to the FBI.
 
 
 7
 On October 4, 1989, Circus Circus received a third letter which specifically threatened the lives of three Circus Circus executives. Once again, the letter changed the color of the Tercel and the parking lot where it should be left. The car was to be left in the Home Club parking lot on East Charleston.
 
 
 8
 The FBI complied with the demands in the letter, except that the garbage bags were filled with paper, instead of cash. The car was under surveillance.
 
 
 9
 At about 10 p.m., the surveillance agents observed two young men approach the parking lot. One crossed the street to the lot, while the other remained behind and watched the first. The first man entered the lot and walked toward the Tercel. He entered the driver's side and then got out. The agents immediately approached him and the second man turned and fled.
 
 
 10
 The man who had entered the car was identified as Raymond Lee Scrum. He voluntarily spoke to the agents, telling them that he was employed at the Home Club and that one of his co-workers, Randy, had asked him if Scrum could pick up one of Randy's friends. Randy told Scrum that his car was in the parking lot of the Home Club on East Charleston, that the keys were in the car and that Scrum should use the car to pick up Randy's friend at "The Landing" on Interstate 15, south of Las Vegas. Randy was to pay Scrum $100 for picking up the friend.
 
 
 11
 The agents checked with the Home Club management and determined that Randy was appellant Randolph Dickey. They obtained his address and visited his home. After a couple of attempts to find the appellant by visiting his apartment, the agents obtained a search warrant and searched the premises. Appellant was in the apartment. The agents seized several handwriting samples. Expert comparisons with the letters sent to Circus Circus indicated that they were written by the same person.
 
 
 12
 Appellant objected to the admission of the writing samples because he admitted at trial to having written the threatening letters. The judge nevertheless admitted two of the samples taken from appellant's home. The first was titled "Survival Program." It apparently detailed a survival plan in preparation for some sort of disaster or emergency. It included statements such as "Own the piece of real estate, also the house!" "Buy piece of property, with house or build house," "Store investments out of governmental snooping," and "Keep investments in places that are highly and quickly liquid."
 
 
 13
 The second writing sample admitted was not titled. It apparently dealt with appellant's specifications for a car. It listed several options or features on a car. Some of the listed features had "bullet marks" in front of them. Others had squares drawn in front of them.
 
 DISCUSSION
 I. Admissibility of Writing Samples
 
 14
 Appellant first contends that the district court improperly admitted hand writing samples seized from his home. Decisions regarding the relevancy of evidence and whether the probative value of evidence outweighs unfair prejudice to the defendant are reviewed for abuse of discretion. United States v. Rubio, 727 F.2d 786, 798 (9th Cir.1983).
 
 
 15
 Appellant argues that the writing samples were unnecessary because he conceded that he wrote the threatening letters. No identification of the handwriting was necessary, he contends, and the writing samples were irrelevant. Even if the samples were not irrelevant, appellant argues, the judge abused his discretion by admitting the samples because either the probative value of the samples was substantially outweighed by their prejudicial effect or the samples were needless presentation of cumulative evidence.
 
 
 16
 Under the standard of review, appellant cannot prevail under any theory on this issue. The samples do have some relevancy, and therefore the judge did not abuse his discretion in admitting them. According to Federal Rule of Evidence 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The samples tend to show appellant's overall plan or scheme to obtain an automobile of his choice and/or effectuate an emergency survival plan. They also negate appellant's theory at trial that the threatening letters were a joke.
 
 
 17
 Even though we find the writing samples relevant, we still must address appellant's allegations that the evidence is unfairly prejudicial or unnecessarily cumulative. The standard of review is again abuse of discretion, and again we find no error.
 
 
 18
 The prosecution introduced the evidence for the purpose of proof that appellant had written the threatening letters to show 1) a common scheme and 2) that the letters were not a joke. It is true that appellant admitted that he had written the threatening letters. However, a trial court has discretion to allow proof despite a defendant's offer to stipulate. United States v. Lee, 800 F.2d 903, 904 (9th Cir.1986). Additionally, the evidence does tend to show an overall scheme of creating and effectuating a survival plan and obtaining a "dream" car. This theory is not apparent simply on the basis of the threatening letters. As mentioned above, the evidence also negates appellant's trial theory that the threatening letters were a joke, something that was not necessarily shown by other evidence. Therefore, we find that the judge did not abuse his discretion in finding the evidence was not unnecessarily cumulative.
 
 
 19
 Finally, the writing samples are not unfairly prejudicial. "Under Rule 403 a court has discretion to exclude relevant evidence that is unfairly prejudicial, that is, if it has an undue tendency to suggest a decision on an improper basis such as emotion or character rather than evidence presented on the crime charged." United States v. Joetzki, 952 F.2d 1090, 1094 (9th Cir.1991) (citing Fed.R.Evid. 403, advisory committee's note; Carter v. Hewitt, 617 F.2d 961, 972 (3d Cir.1980); and United States v. Medina, 755 F.2d 1269, 1274 (7th Cir.1985)).
 
 
 20
 As discussed above, the samples serve a substantial probative purpose. The writing samples are unlikely to motivate a jury to convict improperly. The writings also are unlikely to elicit an emotional response from a jury. We find that the trial judge did not abuse his discretion in finding that the probative value of the evidence was not substantially outweighed by its potential prejudicial effect.
 
 II. Jury Instructions
 
 21
 Appellant challenges the district court's rejection of two proposed jury instructions. Ordinarily, a district court's formulation of jury instructions is reviewed for an abuse of discretion. United States v. Linn, 880 F.2d 209, 217 (9th Cir.1989). A reviewing court should consider jury instructions as a whole in determining whether they are misleading or inadequate. But, "whether a jury instruction misstated elements of a statutory crime is a question of law" to be reviewed de novo. United States v. Spillone, 879 F.2d 514, 525 (9th Cir.1989), cert. denied, 111 S.Ct. 210 (1990). In this case, the alleged errors in both instructions involved the elements of a statutory crime, and thus are subject to a de novo review.
 
 
 22
 The first alleged error in this case is that the judge refused an instruction that, under 18 U.S.C. § 1951, the government must establish actual fear to support a conviction. The Ninth Circuit has not directly decided this issue before.[1] Section 1951 criminalizes the interference with commerce by threats or violence. By its very terms, it includes attempts or conspiracies to interfere with commerce by robbery or extortion. The Ninth Circuit has said that establishing attempted extortion does not require proof that the victim actually experienced fear from the threats. United States v. DeLuca, 692 F.2d 1277, 1283 (9th Cir.1982). Because the statute includes attempt, requiring proof of actual fear on the victims' part would put the statute in conflict with Ninth Circuit law on extortion. As the judge correctly instructed, the jury must find 1) that the defendant caused or attempted to cause the victims to part with money or property by the wrongful use of threat of force or fear and 2) that in so doing, interstate commerce was delayed, interrupted or adversely affected. The statute does not differentiate in culpability between actual and attempted extortion, nor does it require a jury to state which it finds the defendant guilty of doing. Thus, we decline to find an element of section 1951 which requires such a differentiation. The judge did not err in failing to instruct that the government must prove actual fear before the jury may convict.
 
 
 23
 The second alleged jury instruction error is that the judge refused an instruction that, under 18 U.S.C. § 876, a reasonable person standard applies to the determination of whether the defendant made a threat.
 
 
 24
 Section 876 requires proof of only two elements: that the defendant wrote the letter with the threat to injure another and that defendant knowingly caused the letter to be deposited in the mails. United States v. Sirhan, 504 F.2d 818 (9th Cir.1974). Sirhan applied a specific intent standard to the second element--mailing the letter. Later the Ninth Circuit said that the first element--the showing of intent to threaten--is also a specific intent showing. United States v. Twine, 853 F.2d 676, 680 (9th Cir.1988). Appellant is incorrect, therefore, in stating that the government must show that a reasonable person would have believed that a threat was made. The judge told the jury it was required to find that the letters contained threats, rather than something reasonably foreseeable as threats. Thus, we find that the jury instructions given were correct.
 
 
 25
 The judgment of the district court is in all respects AFFIRMED.
 
 
 
 *
 Hon. James M. Burns, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The Fifth Circuit has held that a victim's fear is unnecessary for convictions under section 1951, although that case involved a defendant who was charged with "conspiracy to commit extortion and attempt to commit extortion" in violation of the act. United States v. Kastenbaum, 613 F.2d 86, 87 (5th Cir.1980)